# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **AMERICAN SEAFOODS GROUP, LLC,** | } | |
| | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **Case No.:  7:07-CV-620-RDP** |
| **v.** | } | |
| | } | |
| **DONNIE WEDGWORTH,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

## I.     INTRODUCTION

Plaintiff initially applied to this court for a temporary restraining order and preliminary injunction on April 5, 2007.  (Doc. # 2).  After briefing and oral argument on April 9, 2007, the court terminated Plaintiff's application for a temporary restraining order and took the motion for preliminary injunction under advisement.  On April 16, 2007, the court denied all portions of Plaintiff's application by order and accompanying memorandum opinion, except it enjoined Defendant's solicitation of Plaintiff's (or its subsidiaries' or affiliates') employees.  (Docs. # 14, 15, & 16).

After receiving the arbitration position statements of the parties in accordance with the court's previous April 16, 2007 Order (Doc. # 15), the court ordered briefing on Plaintiff's Motion to Compel Arbitration (Doc. # 19) filed on April 27, 2007.  The parties have completed their briefing and the motion came under submission on May 7, 2007.  Plaintiff filed its Motion to Stay (Doc. # 25) contemporaneously with its reply to Defendant's response to Plaintiff's Motion to Compel Arbitration (Doc. # 24) on May 7, 2007.  For the reasons set forth below, the court finds Plaintiff's

Motion to Compel Arbitration (Doc. # 19) is due to be granted in part and denied in part.  The court will order the parties to submit all claims in this case to arbitration pursuant to their arbitration agreement, except for Count One ("Breach of Contract") and Count Two ("Unjust Enrichment") as pled in Defendant's First Amended Answer and Counterclaim (Doc. # 18).  Additionally, the court finds Plaintiff's Motion to Stay (Doc. # 25) as to these two counterclaims filed by Defendant (Count One, "Breach of Contract," and Count Two, "Unjust Enrichment") is due to be granted.

## II.    STATEMENT OF FACTS[1]

American Seafoods Group LLC ("American Seafoods" or "Plaintiff") is a Delaware limited liability company with its principal place of business in Seattle, Washington.  American Seafoods harvests and processes a variety of fish species and markets its products to a diverse group of customers in North America, Asia, and Europe.  American Seafoods is the parent company of Southern Pride Catfish LLC ("Southern Pride").  Southern Pride processes catfish in Greensboro, Alabama, and it is a division of American Seafoods.

Defendant Donnie Wedgworth ("Wedgworth" or "Defendant") is a resident of the State of Alabama and is over the age of nineteen years old.  From 1979 until December 16, 2002, Wedgworth worked in the catfish industry as a buyer of live catfish, first as an independent broker and then as a buyer for Southern Pride Catfish Company, Inc ("SPCC").  Wedgworth was the Director of Live and Harvest Operations at SPCC.  On May 9, 2001, Wedgworth entered into a Confidentiality and Non-Disclosure Agreement ("First Agreement") with Southern Pride's predecessor SPCC.  (Doc. # 2 Ex. B).

---

[1]Facts are taken from the Parties' Stipulated Facts (Doc. # 10) unless otherwise noted.

On December 16, 2002, American Seafoods purchased the assets of SPCC.  On that same date, Wedgworth entered into a second agreement entitled Alternative Employment Agreement ("Second Agreement") with American Seafoods and Southern Pride, which superceded the First Agreement.  (Doc. # 2 Ex. C; Tr. 57–58).  Upon signing this agreement, Wedgworth became employed as the Director of Live and Harvest Operations for Southern Pride, a division of American Seafoods.  As Director of Live and Harvest Operations, Wedgworth's responsibility was to obtain Southern Pride's supply from the catfish farms.

The Second Agreement contained an arbitration provision which reads as follows:

> Any dispute or controversy between Employer and Executive [Wedgworth], arising out of or relating to this Agreement, the breach of this Agreement, or otherwise, shall be settled by arbitration by a single arbitrator in Tuscaloosa, Alabama, administered by the American Arbitration Association in accordance with its Commercial Rules then in effect and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.  The arbitrator shall have the authority to grant motions to dismiss and for summary judgment, to permit reasonable discovery in accordance with the Federal Rules of Civil Procedure, and to award any remedy or relief that a court of competent jurisdiction could order or grant, including, without limitation, the issuance of an injunction.  However, either party may, without inconsistency with this arbitration provision, apply to any court having jurisdiction over such dispute or controversy and seek interim provisional, injunctive or other equitable relief until the arbitration award is rendered or the controversy is otherwise resolved.  Except as necessary in court proceedings to enforce this arbitration provision or an award rendered hereunder, or to obtain interim relief, neither a party nor an arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of Employer and Executive.  Arbitration costs shall be divided equally between Executive and Employer; provided, however, that the arbitrator shall have the authority to require either party to pay a portion or all of arbitrator fees to the same extent as a court could award costs in a civil proceeding.  The decision of the arbitrator shall be a reasoned opinion, including findings of fact and conclusions of law.  The arbitrator shall have jurisdiction to correct errors in his or her decision on motion of either party or *sua sponte*.

(Doc. # 2 Ex. C ¶ 21).  Therefore, the Second Agreement's arbitration provision applies to all claims "arising out of or relating to" the agreement, with the exception of certain requests for injunctive and/or equitable relief.  (Doc. # 2 Ex. C ¶ 21).

Also in the Second Agreement, Wedgworth agreed to confidentiality, non-competition, non-disparagement, and non-solicitation provisions.  (Doc. # 2 Ex. C ¶¶ 10, 11(b), (c), & (d), 12).  Pursuant to Paragraph 22 of the Second Agreement, Wedgworth's obligations under the provisions of Paragraphs 10, 11, and 12 (the non-disclosure, non-competition, non-solicitation, and non-disparagement provisions) "survive the termination or expiration of [the] Agreement." (Doc. # 2 Ex. C ¶ 22).

On July 6, 2005, Southern Pride provided notice to Wedgworth that it intended to terminate the Second Agreement effective December 16, 2005.  (Doc. # 2 Ex. D).  Following the expiration of the employment term under the Second Agreement, Mr. Wedgworth remained employed as the Southern Pride Director of Live & Harvest Operations and was an at-will, salaried employee, subject to the surviving provisions in the Second Agreement that, pursuant to their terms, continued to govern his employment and post-employment conduct.  (Tr. 20).

On March 16, 2007, Wedgworth resigned from American Seafoods and provided notice that same day.  (Doc. # 2 Ex. E).  Following Wedgworth's resignation, David Bleth ("Bleth") asked Wedgworth to sign an "Employment Separation Agreement," but Wedgworth refused to sign the proposed agreement.  (Doc. # 7 Ex. A).

Since the time of his voluntary resignation, Wedgworth has been employed by Country Select. Country Select is a competitor of Southern Pride in that they sell to similar customers and buy from similar suppliers.  Country Select (a/k/a Consolidated Catfish Companies) sells to and calls

4

on some customers of Southern Pride.  During his employment with Country Select, Wedgworth has solicited and continues to solicit some of Southern Pride's suppliers, including Hollingsworth Brothers farm, Drury Catfish farm, BGH farm, North River, and Double K.   Additionally, Wedgworth has sought to buy product from Bubba Drury's catfish farm, a Southern Pride supplier, and later purchased fish from Drury's on behalf of Country Select.  Wedgworth's business activities for Country Select are limited to seeking to purchase fish from suppliers.  He does not try to sell to any customers.

On April 5, 2007, Plaintiff filed a Complaint against Mr. Wedgeworth alleging a breach of the Second Agreement and pursuing preliminary injunctive relief.  (Doc. # 1).  That same day, Plaintiff filed a Motion for Temporary Restraining Order or, in the Alternative, Motion for Preliminary Injunction.  (Doc. # 2).   By agreement of the parties reached during the hearing on Plaintiff's motion on April 9, 2007, and because of the pendency of Plaintiff's motion for a preliminary injunction, the court dismissed as moot Plaintiff's Motion for Temporary Restraining Order.  After the hearing, the court denied most of the relief requested in Plaintiff's Motion for Preliminary Injunction, and granted only that part pertaining to Defendant's solicitation of Plaintiff's employees after the parties submitted a joint proposed order governing that issue.  (Docs. # 14, 15, & 16).

On April 24, 2007, Wedgworth filed his Amended Answer to the Complaint, which included a counterclaim against Plaintiff for breach of contract, unjust enrichment, and intentional interference with business relations.  (Doc. # 18).  Pursuant to his counterclaim, Wedgworth's breach of contract and unjust enrichment claims arise out of Southern Pride's alleged failure to pay Wedgworth $60,441.00 in bonus compensation to which Wedgworth contends he is entitled.  (Doc. # 18 at pp.

5

16–19).  This claim relates to Plaintiff's obligations to Defendant arising out of the Annual Incentive Plan ("AIP") available to all American Seafoods' employees.  (Doc. # 25 ¶ 2).  The AIP is not calculated in the same manner as the bonus outlined in the paragraph 3b of the Second Agreement, and it is not the subject of any other arbitration agreement.  (Doc. # 25 ¶¶ 3–4).  In contrast, Wedgworth's intentional interference with business relations claims arises out of American Seafoods' pursuit of legal action in seeking to enforce the terms of the Second Agreement.  (Doc. # 18 at 19–21).

Plaintiff seeks compensatory, special, and punitive damages, as well as restitution, costs, and attorneys' fees, alleging several claims against Defendant, including: "Breach of Contract" (Count I); "Breach of Fiduciary Duty" (Count II); "Suppression of Material Facts: Alabama Code § 6–5–102" (Count III); and "Intentional Interference with Business and/or Contractual Relations" (Count IV.  Defendant asks this court to award him compensatory and punitive damages as well, pleading three counterclaims against Plaintiff, including: "Breach of Contract" (Count One); "Unjust Enrichment" (Count II); and "Intentional Interference with Contractual and Business Relations" (Count Three).

## III.   STANDARD OF REVIEW

According to the Supreme Court, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  Moreover, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"), "establishes [], as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or like defense to

6

arbitrability." *Id.*; *see also B.L. Harbert Intern., LLC. v. Hercules Steel Co.*, 441 F.3d 905, 906 (11th Cir. 2006) ("The FAA liberally endorses and encourages arbitration as an alternative to litigation"). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)(emphasis in original) (interpreting 9 U.S.C. § 4).

Plaintiff argues that all of its claims against Defendant and all of Defendant's counterclaims are covered by the arbitration provision in the Second Agreement, because they each "arise out of" or "relate to" the Second Agreement.  Specifically, Plaintiff asserts that each of its claims are based on Defendant's alleged breach of the Second Agreement and/or the duties arising under that contract, or "relate to" Defendant's compensation and separation of employment, which are matters treated in the Second Agreement.  Defendant counters that Plaintiff has waived its right to arbitrate by substantially invoking the litigation process, and he will be prejudiced by arbitration at this stage in the litigation.  Defendant further argues that even if Plaintiff has not waived that right, the arbitration provision was not specifically enumerated in the contractual clauses that survive the expiration of the Second Agreement (per paragraph 22 of the Second Agreement), and is therefore unenforceable. Finally, Defendant avers that, in any event, his counterclaims are not subject to the arbitration provision in that the conduct giving rise to them occurred well after the expiration of the Second Agreement and two of his claims—breach of conduct and unjust enrichment—arise under the AIP, which does not have a separate arbitration provision.

In light of these arguments, the court must decide:  (1) whether Plaintiff has substantially invoked the litigation process so as to waive its right to compel arbitration; (2) if not, whether the

arbitration agreement survives the expiration of the Second Agreement and to what extent it does so; and (3) if Plaintiff has not waived its right to compel arbitration, and the arbitration provision covers Plaintiff's claims, whether or not it also encompasses Defendant's counterclaims.   In answering each of these questions, the court will be guided by state law, as "[f]ederal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001); *see also Perry v. Thomas*, 482 U.S. 483 (1987).  Specifically, "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc., v. Kaplan*, 514 U.S. 938, 944 (1995).  Thus, the court will  refer to Alabama contract and agency law in order to answer these specific questions, while keeping in mind the federal policy underlying the FAA.

## IV.    ANALYSIS

Section 2 of the FAA provides a written arbitration provision contained "in any . . . contract evidencing a transaction involving commerce . . . [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. §§2, 4.  In addition, section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" to petition the court "for an order directing that such arbitration proceed."  9 U.S.C. § 4.  The Supreme Court has expressly held arbitration agreements are enforceable between an employer and employee.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *see also Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000) (holding "where [] the agreement to arbitrate was made by the individual employee,

and not by his collective bargaining representative, the employee can be compelled to arbitrate his statutory claim.").   An arbitration agreement is specifically enforceable under the FAA if the following requirements are established: (1) the existence of a written agreement to arbitrate claims; (2) a nexus to interstate commerce; and (3) coverage of the claims by the arbitration clause.  9 U.S.C. § 2.

Here, Defendant expressly acknowledges the existence of the written arbitration provision in the Second Agreement and does not appear to argue that the arbitration provision in question would not be enforceable against a proper party as to any claim encompassed by the agreement. Moreover, Defendant has declined to address whether the Second Agreement and Wedgworth's relationship to Plaintiff has a sufficient nexus to interstate commerce so as to bring it within the scope of the FAA.  The court concludes that Plaintiff has presented sufficient evidence for the court to find that the employment relationship Defendant had with Plaintiff pursuant to the Second Agreement had a sufficient nexus with interstate commerce so as to invoke this court's jurisdiction under the FAA.  *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 55–58 (2003).  For the following reasons, the court also concludes that Plaintiff has not waived its right to compel arbitration, the arbitration clause survives the expiration of the Second Agreement, and all claims of both Plaintiff and Defendant in this case "arise from" or "relate to" the Second Agreement so that they are covered by the arbitration provision and must be arbitrated, except Defendant's counterclaims for breach of contract and unjust enrichment, over which this court will retain jurisdiction.

**A.    Plaintiff has not waived its right to arbitrate.**

Defendant insists that "[b]y filing this litigation in which it sought not only preliminary injunctive relief, but also compensatory and punitive damages, and above all, demanded a trial by

jury, American Seafoods has waived any right to arbitrate it had under the 'Second Agreement' between American Seafoods and Wedgworth dated December 16, 2002." (Doc. # 20 at p. 3). The court disagrees with Defendant's assessment and finds that Plaintiff has not substantially invoked the litigation process nor prejudiced Defendant by its actions.

An agreement to arbitrate, like any other contract, may be waived. *See Ivax Corp. v. B. Braun of America, Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002); *Burton-Dixie Corp. v. Timothy McCarthy Const. Co.*, 436 F.2d 405, 407 (5th Cir.1971).[2] A party may waive its right to arbitration by substantially invoking the litigation process prior to demanding arbitration, where the litigation process prejudices the party opposing arbitration.[3] *See S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990). To determine whether a party has waived its right to arbitrate, the Eleventh Circuit has established a two part test. First, a court must decide whether, "under the totality of the circumstances," the party "has acted inconsistently with the arbitration right." *Ivax Corp.*, 286 F.3d at 1315–16. Second, the court must review whether, by acting inconsistently with its arbitration right, the party "has in some way prejudiced the other party." *Id.* at 1316 (citation omitted). However, "any doubts regarding a waiver must be resolved in favor of arbitration, and the party opposing arbitration must meet a 'heavy burden' to prove waiver." *Chrysler Fin. Corp. v. Murphy*, 1998 WL 34023394 *5 (N.D. Ala. Aug. 5, 1998) (citing *Driscoll v. Smith Barney, Harris,*

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[3]The question of whether a party's pretrial conduct amounts to waiver of arbitration is a legal question. *See Ivax Corp.*, 286 F.3d at 1316 (citing *Leadertex, Inc. v. Moranton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995)). Furthermore, whether a party has waived its right to arbitration is a federal question, not one of state law. *See S & H Contractors, Inc. v. A. J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990).

*Upsham, and Co.*, 815 F.2d 655, 659 (11th Cir. 1987)); *see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Based upon the totality of the circumstances, the court concludes that American Seafoods has not "substantially invoked" the litigation process.  When reviewing the totality of the circumstances, the Eleventh Circuit gives weight to various factors, including: 1) the delay in demanding arbitration; 2) the expense incurred by the moving party as a result of appearing before a judicial tribunal; 3) the relative hardships; and 4) the motives of the parties.  *See S & H Contractors, Inc. v. A. J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990).  The Eleventh Circuit has upheld waiver when the party seeking arbitration clearly appeared to forego arbitration and instead sought to resolve the dispute in court.  *See, e.g., id.* at 1514 (holding the party demanding arbitration waived its right to arbitrate by waiting eight months after filing its complaint before moving to arbitrate).

In the present case, Plaintiff filed its Complaint on April 5, 2007, and contemporaneously filed a Motion for Temporary Restraining Order or in the Alternative for a Preliminary Injunction. (Docs. # 1 & 2).  The arbitration clause found in the Second Agreement expressly allows a party to seek interim injunctive or equitable relief without waiving arbitration rights.  (Doc. # 2 Ex. C ¶ 21). The court conducted a hearing on Plaintiff's Motion for Preliminary Injunction on April 9, 2007, four days after Plaintiff filed its complaint.  The issue of arbitration arose during this hearing, as Plaintiff's counsel asserted it intended to proceed with arbitration. On April 16, 2007, the court denied Plaintiff's Motion for Preliminary Injunction and requested a response as to the arbitrability of the claims in the case by April 27, 2007.  (Doc. # 15).  On April 27, 2007, American Seafoods filed its Motion to Compel Arbitration.  (Doc. # 19).

The court concludes that Plaintiff did not delay in demanding arbitration, and, to the contrary did so shortly after the court substantially denied its application for injunctive relief, which was expressly permitted by the arbitration provision.  Nineteen days (from the time the complaint was filed until Plaintiff filed a motion to compel arbitration) is not a sufficient delay to constitute a waiver of the right to compel arbitration.  Nor has Plaintiff sought to avoid arbitration through artful pleading or argument.  To the contrary, Plaintiff attached the employment agreements as exhibits to its Complaint and to its Motion for Temporary Restraining Order.  (Doc. # 1 Exs. A & B; Doc. # 2 Exs. B & C).  Furthermore, it indicated its intent to arbitrate to the court, both during pre-hearing, in chamber discussions and in open court, albeit in a sidebar conversation not on the record.  As Plaintiff sought only injunctive relief in this court, and such was its express right under the arbitration agreement between the parties, Defendant cannot argue that he has expended an inordinate amount defending the applications for interim relief.  Finally, the invocation of arbitration at such an early stage in litigation assures this court that no party has invested so much time, effort, or money on the litigation process such that it would be prejudiced by an order compelling arbitration.  *Morewitz v. West of England Ship Owners Mut. Protection & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995) ("Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate.").  Thus, in looking at the totality of the circumstances, the court finds that Plaintiff has not waived its right to arbitrate claims arising from or related to the Second Agreement.

Defendant next argues that he would be prejudiced by Plaintiff's invocation of arbitration because Plaintiff, in its Complaint, sought "not only preliminary injunctive relief, but also compensatory and punitive damages, and above all, demanded a trial by jury."  (Doc. # 20 at p. 3).

The court believes Defendant makes too much of this action. As the court pointed out in the April 9, 2007 hearing, Plaintiff was *required* to file a complaint in order to invoke this court's jurisdiction so that it could entertain the motions for interim equitable relief, which is *exactly what was contemplated by the parties' arbitration provision*. (Tr. Hr'g Prelim. Inj. ("Tr."), 2–3, Apr. 9, 2007). Furthermore, preliminary motions do not necessarily "substantially invoke" the litigation process by involving discovery or hearings. *See Gen. Guaranty Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 929 (5th Cir. 1970); *Goff Group, Inc. v. Greenwich Ins. Co.*, 231 F. Supp. 2d 1147, 1155 (M.D. Ala. 2002). The inclusion of its claims, theories, demand for damages, and a jury demand were simply requisite parts of a well-pleaded complaint and preserved such claims for Plaintiff in the event that this court found arbitration inappropriate for some reason. *See Gen. Guaranty Ins. Co.*, 427 F.2d at 929.

Defendant also objects to arbitration by insisting that because Plaintiff demanded a jury trial in its Complaint, it has somehow reinvigorated Defendant's Seventh Amendment right to a jury trial in this case. (Doc. # 20 at p. 5–7). This argument is a *non sequitur*. Although it may be true that "a demand for trial by jury made as herein provided [in Rule 38] may not be withdrawn without the consent of the parties." FED. R. CIV. P. 38(d). Again, the court views that component of Plaintiff's complaint as nothing more than a requisite part of a well pleaded complaint that reserved the demand in the event Plaintiff was unsuccessful in demanding arbitration. In fact, in light of the court's holding (explained in more detail below) that two of Defendant's counterclaims *are not arbitrable* under the Second Agreement, Plaintiff has successfully demanded a jury as to those claims. In summary, Plaintiff's jury demand does not have the constitutional implications attributed it by

Defendant and, in any event, Defendant's constitutional right to trial by jury *has been preserved* as to those claims that are not arbitrable.

Additionally, only such discovery necessary for the evaluation of Defendant's counterclaims has commenced, which is insufficient to evidence waiver, especially considering both parties' willingly entered into a protective order to facilitate such discovery after this motion was pending. *See Benoay v. Prudential-Bache Sec., Inc.*, 805 F.2d 1437, 1440 (11th Cir. 1986) (holding mere participation in discovery does not cause prejudice sufficient to constitute a waiver of the right to arbitrate). Wedgworth has only filed an Answer and an Amended Answer. (Docs. # 17 & 18). After the filing of the Complaint and its initial Motion for Temporary Restraining Order, the only other filings made by American Seafoods have been those directed by the court. (Docs. # 15 & 21). Simply stated, Defendant has not demonstrated he has been sufficiently prejudiced by the litigation proceedings thus far to warrant a finding that Plaintiff has waived its right to arbitration.

**B.      The arbitration provision survived the termination of the Second Agreement.**

Defendant next argues that since the parties did not include the arbitration provision in the list of provisions extended by the "survival clause" of the Second Agreement, it did not survive the termination of the Second Agreement on December 16, 2005 and cannot apply to any claims based upon conduct occurring after that date. The court must again disagree with Defendant. First, arbitration provisions typically survive the expiration of the agreement in which they are contained as long as the claims for which arbitration is demanded are premised upon such agreement. The Supreme Court has held "the parties' obligations under their arbitration clause survive contract termination when the dispute [is] over an obligation arguably created by the expired contract." *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 252 (1977); *see*

14

*also Montgomery Mailers' Union No. 127 v. Advertiser Co.*, 827 F.2d 709, 712 (11th Cir.1987); *see also* 4 AM. JUR. 2D *Alternative Dispute Resolution* § 79 (2007) ("The termination of the contract prior to a demand for arbitration will generally have no effect on such demand, provided that the dispute in questions either arose out of the terms of the contract or arose when a broad contractual arbitration clause was still in effect.").

Furthermore, as a matter of federal arbitration policy, the Supreme Court has also stated "the extensive obligation to arbitrate under [a] contract in question [is] not consistent with an interpretation that would eliminate all duty to arbitrate as of the date of expiration [of the contract]." *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208 (1991). As the Court held, an interpretation to the contrary "would preclude the entry of a post-contract arbitration order even when the dispute arose during the life of the contract but arbitration proceedings had not begun before termination. The same would be true if arbitration processes began but were not completed, during the contract's term." *See Nodle Bros.*, 430 U.S. at 251.

The court finds that the parties' omission of the arbitration provision from the survival clause of the Agreement has no effect on the enforceability of the arbitration provision as concerning the claims covered by such provision. Notwithstanding the failure to reference the arbitration provision in the survival clause, the parties obviously intended to submit all claims "arising out of" or "relating to" the Second Agreement. All of Plaintiff's claims and at least one of Defendant's counterclaims fall into this category. *See* Part IV.C *infra*. Therefore, the arbitration provision is effective even though portions of the Second Agreement may have expired or terminated.

15

C.      **Plaintiff's claims and Defendant's counterclaim for interference with business or contractual relations fall within the scope of the arbitration provision.**

Finally, Defendant argues that even if Plaintiff has not waived its right to compel arbitration and the arbitration provision in the Second Agreement is still effective despite the contract's termination, all the claims asserted in this case fall outside the scope of the arbitration provision. Defendant's principal rationale for this argument is that the conduct upon which most of Plaintiff's claims is based occurred in March 2007, while Plaintiff terminated the Second Agreement on December 16, 2005. Once again, the court must disagree with Defendant's assessment, as each of Plaintiff's claims and Defendant's claim for intentional interference with business and/or contractual relations clearly "arise from" or "relate to" the Second Agreement. Moreover, the non-solicitation, confidentiality, and non-competition provisions in the Second Agreement arguably extend for up to three years after the termination of the contract, bringing the actions of which Plaintiff complains well within the time frame in which the contract is still effective.[4]

It is true that "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT& T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *see also Hales v. Proequities, Inc.*, 885 So. 2d 100, 105 (Ala. 2003) (applying Alabama contract law "a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit"). However, in determining whether the dispute falls

---

[4]The court reminds Defendant that simply because it found in its earlier April 16, 2007 Order and Memorandum Opinion (Docs. # 14 & 15) that Plaintiff did not demonstrate a substantial likelihood of success on the merits of its claims and explained that the non-competition provision is probably no longer binding upon Defendant, that does not mean Plaintiff will not ultimately prevail on these claims. This is more properly a defense that Defendant should raise in arbitration rather than a reason for this court to find these claims are not subject to the arbitration provision of the Second Agreement.

16

within the scope of the arbitration agreement, "ambiguities . . . [are] resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  "Thus, a motion to compel arbitration should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *SouthTrust Bank v. Bowen*, 2006 WL 3530655, at *5 (Ala. Dec. 8, 2006) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).  In addition, "the burden of proving that the dispute falls outside the scope of the arbitration agreement shifts to the nonmovant after the movant proves the existence of a contract containing an arbitration provision and that the transaction that is the subject of the contract had an impact on interstate commerce." *Edwards Motor Inc., v. Hudgins*, 2006 WL 2988690, at *3 (Ala. Oct. 20, 2006).

The arbitration provision in the Second Agreement encompasses "[a]ny dispute or controversy between Employer and Executive, arising out of or relating to this Agreement, the breach of this Agreement, or otherwise . . . ."  (Doc. # 2 Ex. C ¶ 21).  The federal courts in Alabama, as well as the Alabama Supreme Court, have held that the "arising out of" or "relating to" language is broad enough to encompass a wide range of disputes, ranging from claims based on the contract language or underlying transaction, to claims between the contracting parties with respect to different transactions, to malicious prosecution claims brought by one party after the other pressed criminal charges.  *See, e.g.*, *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999) (holding that the buyer was equitably estopped from avoiding arbitration of claims with automobile service provider when he had signed arbitration agreement with automobile dealership); *Edwards Motor Inc., v. Hudgins*, 2006 WL 2988690, at *2–*3 (Ala. Oct. 20, 2006) (compelling the arbitration of a

17

malicious prosecution claim by plaintiff whom defendant had reported to authorities for credit fraud under an arbitration agreement in a vehicle purchase agreement, stating "all disputes ... resulting from or arising out of or relating to or concerning the [purchase of the vehicle]" were subject to arbitration); *First Family Financial Services, Inc. v. Rogers*, 736 So.2d 553 (Ala. 1999) (borrowers were bound to arbitrate misrepresentation and fraud claims against lender even though disputes arose out of loans made years before the borrowers signed the agreement, which related to a new and separate transaction); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kirton*, 719 So.2d 201 (Ala. 1998) (compelling arbitration of claims arising before arbitration agreement signed); *Ex parte Lorance*, 669 So.2d 890, 892–93 (Ala.1995) (holding that the language of the arbitration clause— "'[a]ny controversy or claim arising out of . . .'"—was broad enough to encompass the plaintiff's claim alleging fraud in the inducement of the contract). Undoubtedly, the "arising out of or relating to" language of the Second Agreement allows this clause to encompass a broad variety of disputes.

Plaintiffs' claims against Defendant arise from his alleged breach of the noncompetition, confidentiality, and nonsolicitation provisions of the Second Agreement. Specifically, Plaintiff alleges: (1) breach of contract, arising from Defendant's alleged breach of several clauses of the Second Agreement; (2) breach of fiduciary duty, arising from Defendant's alleged violation of the confidentiality agreement and non-disparagement clause of the Second Agreement; (3) suppression of material facts, citing Alabama Code § 6–5–102, arising from Defendant's alleged violations of the confidentiality provision and exclusivity of employment clause of the Second Agreement; and (4) intentional interference with business and/or contractual relations, arising from Defendant's alleged breach of the nonsolicitation and noncompetition provisions in the Second Agreement. (*See* Doc. # 1; Doc. # 2 Ex. C ¶¶ 10(b), 11, 12). However, of Defendant's three counterclaims against Plaintiff,

18

only the claim for intentional interference with contractual and business relations cites conduct "related to" the Second Agreement, in that it alleges that Plaintiff, by seeking to enforce the Second Agreements' terms, has interfered with Defendant's relationship with his new employer and various suppliers. (Doc. # 18 at 19–21). Defendant's breach of contract and unjust enrichment claims cannot be said to "relate to" the Second Agreement as they are based on Plaintiff's obligations to Defendant arising out of the Annual Incentive Plan ("AIP") available to all American Seafoods' employees, which  does not have its own independent arbitration agreement.[5]  (Doc. # 25 ¶¶ 2–4).  As all of Plaintiff's claims and Defendant's intentional interference with business and contractual relations claim fall within the scope of the arbitration provision, Plaintiff's motion to compel arbitration is due to be granted in part.   However, the court will retain jurisdiction over Defendant's other two counterclaims—breach of contract and unjust enrichment—as they arise out of a separate agreement between Plaintiff and Defendant that does not contain an arbitration provision.

## V.    CONCLUSION

For the forgoing reasons, the court concludes that Plaintiff's Motion to Compel Arbitration is due to be granted as to all claims except for Count One ("Breach of Contract") and Count Two ("Unjust Enrichment") as pled in Defendant's First Amended Answer and Counterclaim (Doc. # 18), over which the court will retain jurisdiction.  Additionally, the court finds that Plaintiff's Motion to Stay is due to be granted as to these claims and this case will be placed upon the court's administrative docket until such time as the parties arbitrate all claims except those contained in

---

[5]In addition, this claim arose after the termination of the Second Agreement in that the document upon which it is based was provided to Defendant (and allegedly breached) after that contract was terminated.

Counts One and Two of Defendant's counterclaim.  A separate order will be entered in accordance with this memorandum opinion.

      **DONE** and **ORDERED** this _____30th_____ day of May, 2007.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE